UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MICHAEL WILLIAMS,

    Plaintiff,

CASE NO. 06-CV-12385

v.

DISTRICT JUDGE THOMAS LUDINGTON
MAGISTRATE JUDGE CHARLES E. BINDER

LIVINGSTON, Shift Supervisor,

    Defendant.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
**ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**(Dkt. 14)**

**I.     RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Defendant Robert Livingston's Motion for Summary Judgment be **GRANTED**.

**II.    REPORT**

    **A.     Introduction and Facts**

This *pro se* prisoner civil rights case brought pursuant to 42 U.S.C. § 1983 was referred by United States District Judge David M. Lawson to the undersigned Magistrate Judge for pretrial case management pursuant to 28 U.S.C. § 636(b). (Dkt. 3.) The case was reassigned to United States District Judge Thomas L. Ludington on September 13, 2006, pursuant to Administrative Order 06-AO-027. (Dkt. 10.) Plaintiff is an inmate in the custody of the Michigan Department of Corrections ("MDOC") and is currently housed at the Bellamy Creek Correctional Facility in Ionia, Michigan.

Plaintiff claims that on December 2, 2005, he was repeatedly assaulted by his cellmate, prisoner Miller. (Compl., Dkt. 1.) Plaintiff asserts that these assaults occurred after he had informed the corrections staff numerous times that he and prisoner Miller were not getting along and that Miller had threatened him. (*Id.*) Plaintiff further claims that one of the assaults was witnessed by Defendant Livingston ("Defendant"), a corrections officer, who refused to separate them despite seeing Plaintiff's injuries. (*Id.*) Plaintiff states that, later that evening, after another assault occurred, he was finally removed from the cell. (*Id.*)

Defendant recalls that during his rounds on December 1, 2005, Plaintiff stopped him and informed him that his cellmate, prisoner Miller, "had hit him with his (Plaintiff's) fan." (Def.'s Mot., Dkt. 14, Ex. 1 ¶ 4.) At that time, the fan was on the desk. (*Id.*) Plaintiff indicated to Defendant that the assault had occurred while he was walking by the cell, but Defendant did not see any assault. (*Id.* ¶ 5.) Although Plaintiff "showed [Defendant] his left thigh, where he was allegedly hit, [Defendant] saw no marks or injuries." (*Id.* ¶ 6.) Defendant was told by Plaintiff that he "could not get along with prisoner Miller" so Defendant told both Plaintiff and Miller to remain on their bunks for the rest of the night. (*Id.* ¶ 7.) Defendant also "told the unit officers to keep an eye on both prisoners." (*Id.* ¶ 8.) Approximately one hour later, Officer Bunce called Defendant because he found both Plaintiff and Miller "on the floor, but they weren't fighting." (*Id.* ¶ 9.) Defendant took Plaintiff to the day room and Plaintiff indicated that "he had been assaulted earlier in the day by prisoner Miller and that he had reported the assault to Sgt. Ingram." (*Id.* ¶ 11.) Defendant states that "[t]his was the first I heard about that." (*Id.*)

Defendant states that he then spoke with Sgt. Ingram who confirmed that Plaintiff had reported the assault to her, that she had spoken with Plaintiff and Miller, and, because "they had apparently worked out their differences, they were sent back to their cell." (*Id.* ¶ 12.) Defendant

2

then returned to the day room to continue talking with Plaintiff at which time Plaintiff requested a "cell move." (*Id.* ¶ 13.) Defendant told Plaintiff that there were no open beds in Unit #2 so he would have to wait until the morning when other prisoners were being transferred out of the unit. (*Id.* ¶ 13.) Defendant suggested that Plaintiff go to Unit #8 for the night and he would leave word with Sgt. Fox, the case manager, to move Plaintiff back to Unit #2 as soon as beds were available in the morning. (*Id.*) Plaintiff agreed to this plan. He was moved from the cell he shared with prisoner Williams, taken to Unit #8, and placed in a cell there. (*Id.* ¶ 14.) While being "dressed out in Unit # 8," Plaintiff showed Defendant "some scratches on his thigh," but Defendant "cannot say when they occurred because these scratches were not present when [he] first saw [Plaintiff's] thigh earlier on [his] shift." (*Id.* ¶ 15.) The next morning, Plaintiff was, as promised, moved into a cell in Unit #2 "on the opposite wing from prisoner Miller." (*Id.* ¶ 16.)

Defendants Michigan Department of Corrections ("MDOC") and Miller were terminated on August 15, 2006. (Dkt. 8.) Therefore, Corrections Officer Livingston is the sole remaining Defendant.

### B.     Governing Standards

A motion for summary judgment will be granted under Rule 56(c) where "there is no genuine issue as to any material fact . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). In determining whether the moving party

has met its considerable burden, a court may consider the plausibility of the moving party's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 326.

In response, the non-moving party cannot rest merely on the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos*., 8 F.3d 335, 339-40 (6th Cir. 1993). When the nonmoving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. Instead, the court will rely upon the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992). The Sixth Circuit explicitly instructed that it is "utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion." *Id.* at 406.

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

Plaintiff has not responded to the Defendant's motion; therefore, he has rested on the pleadings and summary judgment would be proper on this ground alone. *Anderson, supra; Moore, supra.* As discussed below, even if the merits are addressed, I suggest that summary judgment should be granted.

### C. Analysis and Conclusions

#### 1. Exhaustion of Administrative Remedies

Prisoner civil rights cases are subject to the Prison Litigation Reform Act's ("PLRA") mandate that "[n]o action shall be brought with respect to prison conditions under § 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). To exhaust a claim, a prisoner must proceed through all of the steps of a prison or jail's grievance process, because an inmate "cannot abandon the process before completion and claim that he has exhausted his remedies." *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999). The Supreme Court held in *Woodford v. Ngo*, ___ U.S. ___, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006), that failure to "properly" exhaust bars suit in federal court. "Proper exhaustion" means that the plaintiff complied with the administrative agency's "critical procedural rules," such as time limits for filing grievances, and is a precondition to any suit challenging prison conditions. *Id.* at 2386.

The United States Supreme Court recently clarified certain provisions of the PLRA, rejecting several of the Sixth Circuit's interpretations of the Act. *See Jones v. Bock*, ___ U.S. ___, 127 S. Ct. 910 (2007). For example, the Court in *Jones* struck down the Sixth Circuit's procedural

5

rule placing the burden on prisoners to plead and prove exhaustion in their complaint, holding instead that failure to exhaust is an affirmative defense. *Id.* at 921.[1]

Defendant has not argued the affirmative defense that Plaintiff failed to exhaust administrative remedies. In addition, I note that Plaintiff complied with MDOC policy and by submitting a grievance and appealing the denial of the grievance all the way through Step III of the MDOC process. Therefore, I suggest that the exhaustion requirement does not impede Plaintiff's claim.

### 2.      Qualified Immunity

Defendant asserts that he is entitled to qualified immunity. (Dkt. 14 at 5-7.) The Supreme Court has explained that, pursuant to the defense of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). The rationale underlying the doctrine is that "an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Id.* Qualified immunity further recognizes that "[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine will apply to the factual situation he confronts. 'If the officer's mistake as to what the law requires is reasonable, . . . the officer is entitled to the immunity defense.'" *Greene*

---

[1] The Court drew upon the reasoning of *Woodford* when it struck down the Sixth Circuit's rule barring prisoners from bringing suit against any defendant whom the prisoner had not named in a first-step administrative grievance, noting that "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion. [Thus, since] the MDOC's procedures make no mention of naming particular officials, the Sixth Circuit's rule imposing such a prerequisite to proper exhaustion is unwarranted." *Jones,* 127 S.Ct. at 922-23.

*v. Barber*, 310 F.3d 889, 894 (6th Cir. 2002) (quoting *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)).

The defense of qualified immunity "can be raised at various stages of the litigation including at the pleading stage in a motion to dismiss, after discovery in a motion for summary judgment, or as an affirmative defense at trial." *English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994) (citing *Kennedy v. City of Cleveland*, 797 F.2d 297, 299-300 (6th Cir. 1986)). When raised after discovery, "the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985).

To determine whether an official is entitled to qualified immunity, the Sixth Circuit has instructed that:

> The first inquiry is whether the [p]laintiff has shown a violation of a constitutionally protected right; the second inquiry is whether that right was clearly established at the time such that a reasonable official would have understood that his behavior violated the right; and the third inquiry is 'whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of clearly established rights.'

*Tucker v. City of Richmond, Ky,* 388 F.3d 216, 219 (6th Cir. 2005), quoting *Higgason v. Stephens*, 288 F.3d 868, 878 (6th Cir. 2002). At times, this Circuit employs a two-part test. *E.g., Greene v. Barber*, 310 F.3d 889, 894 (6th Cir. 2002). This three-part test simply adds the summary judgment language requiring evidence to support the claim and encompasses the rule that when the defense of qualified immunity is raised, the burden rests with Plaintiff to show that the Defendant is not entitled to qualified immunity. *Curry v. School District of the City of Saginaw*, 452 F. Supp. 2d 723, 734 (E.D. Mich. 2006) (citing *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)).

### a. Whether an Eighth Amendment Violation Occurred

"Prison officials have an affirmative duty to protect inmates from violence perpetrated by other prisoners." *Wilson v. Yaklich*, 148 F.3d 596, 600 (6th Cir. 1998) (citing *Farmer v. Brennan*, 511 U.S. 825, 847, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)). "Nonetheless, not all injuries suffered by an inmate at the hands of another prisoner result in constitutional liability for prison officials under the Eighth Amendment." *Wilson*, 148 F.3d at 600. *Accord Farmer*, 511 U.S. at 834. "A prison official violates the Eighth Amendment only when . . . [f]irst, the deprivation alleged must be, objectively, 'sufficiently serious' [and] [s]econd, when the offending conduct itself is not a criminal penalty. It is the 'unnecessary and wanton' infliction of pain that implicates the Eighth Amendment . . . [t]hus, a prison official will be liable under the Eighth Amendment for failing to protect an inmate only if the official acted with 'deliberate indifference.'" *Davis v. Brian*, 1999 WL 503522, *3 (6th Cir. July 9, 1999) (unpublished) (internal citations omitted). "Obduracy or wantonness, not inadvertence or good faith error, characterizes deliberate indifference." *Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992).

In the instant case, viewing the facts most favorably to Plaintiff, Defendant failed to notice that prisoner Miller assaulted Plaintiff, resulting in no visible injury, while he was walking by the cell. (Dkt. 1; Dkt. 14, Ex. 1, ¶¶ 4-6.) Alternatively, if Plaintiff's injuries arose from the two cellmates having been on the floor of the cell (but not obviously fighting), Defendant's actions in requiring the cellmates to remain in their bunks and ordering the guards to watch them were insufficient to prevent further injury to Plaintiff. (Dkt. 14, Ex. 1 ¶¶ 7-9.)

Plaintiff suffered scratches on his thigh. (*Id.* ¶ 15.) I suggest that this injury is not "sufficiently serious" to state an Eighth Amendment violation. Even if it were, I further suggest that deliberate indifference cannot be established under the circumstances.

It is not even alleged that Defendant was aware of any problems between the cellmates until the initial assault occurred; therefore, Defendant could not have been deliberately indifferent to any risk of harm to Plaintiff. *Farmer*, 511 U.S. at 844 (prison officials may be free from liability if they were unaware of the facts giving rise to the danger ); *Varmado-El v. Martin*, 52 Fed. App'x 764, 766 (6th Cir. 2002) (finding no deliberate indifference where guard recalled a confrontation between plaintiff and offending inmate that the guard considered to be the "natural pushing and shoving that accompany a basketball game rather than an assault" and where previous fight between plaintiff and offending inmate resulted in both participants receiving misconduct tickets); *Smith v. Straub*, 2000 WL 1679445, *1-2 (6th Cir. Oct. 31, 2000) (unpublished) (finding prison guards did not act with deliberate indifference where inmate who assaulted the plaintiff had "no history of misconduct involving serious injury" prior to assault on plaintiff); *Davis, supra* (affirming summary judgment for defendants where prior heated argument between the plaintiff and inmate was not reported because plaintiff believed it was "common knowledge" and where although inmate had assaulted others, black and white, these incidents did not give the guards notice that the inmate was a substantial risk to white inmates; where guards opened plaintiff's cell door while inmate was on the catwalk; and where other guards who were not named in the suit had broken up a previous fight between plaintiff and the offending inmate).[2]

---

[2]Deliberate indifference will be found to exist only where defendant had notice of a substantial risk of harm. *See Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990) (finding deliberate indifference where officers were told by decedent that his ultimate killer was chasing him with a knife and was intent on killing him and where they had opportunities to prevent the stabbing death by opening the door to the yard to permit decedent to elude his killer, by restraining his killer at the door, by shutting the door before the killer could follow decedent into the yard or by intervening when the killer began attacking decedent as the guards looked on); *Clark v. Corrections Corporation of America*, 98 Fed. App'x 413, 415-16 (6th Cir. 2004) (denying summary judgment in favor of defendants where defendants knew offending inmate was on medication that caused "violent mood swings" and that he was "having problems dealing with his mental problems and had himself requested to be placed in 'the bubble,' an isolated restraint cell for the mentally disturbed," they denied his request to be isolated, and knew of a "'serious conflict'" between plaintiff and the offending inmate).

Under a potential alternative theory, where Plaintiff's injuries arose from the two cellmates having been on the floor of the cell (but not obviously fighting), I suggest that deliberate indifference cannot be established. Defendant required the cellmates to remain in their bunks and ordered the guards to watch them. (Dkt. 14, Ex. 1 ¶¶ 7-9.) Even if this chosen course of action did not prevent injury, it was reasonable and, at most, good faith error which falls far short of deliberate indifference. *See Gibson, supra; Farmer*, 511 U.S. at 844 (prison officials may be free from liability "if they responded reasonably to the risk " and "believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent."); *Taylor v. Little*, 58 Fed. App'x 66, 68 (6th Cir. 2003) (finding no deliberate indifference where offending inmate's prior assault was on a potential witness against him, where defendants were not aware of previous assault by offending inmate on plaintiff and where defendant responded reasonably by ordering offending inmate to stop, attempting to get a stun gun, and calling for help).

I further suggest that Defendant's actions taken after the assault occurred reveal that he was not deliberately indifferent to Plaintiff's needs. Defendant was not informed that the initial incident, which occurred while he was walking by the cell, had been reported as an assault to a Sergeant Ingram until over an hour later. (Dkt. 14, Ex. 1 ¶ 11.) Once informed about the reported assault, Defendant inquired about the report and continued to speak with Plaintiff. (*Id.* ¶ 12.) Plaintiff requested to be moved and Defendant moved him into a different unit and then into a cell on the opposite wing from the offending inmate. (*Id.* ¶¶ 13-14.) It was at this time that Defendant noticed scratches on Plaintiff's thigh. (*Id.* ¶ 15.) I suggest that Defendant's prompt action which protected Plaintiff from any further assault was reasonable and proper and shows a lack of deliberate indifference. *Wells v. Jefferson County Sheriff Dep't*, 35 Fed. App'x 142 (6th Cir. 2002) (finding no deliberate indifference where defendants protected plaintiff from further assaults by

10

placing plaintiff in segregation and moving him to a holding cell away from other inmates after assault occurred); *Doe v. Bowles*, 254 F.3d 617, 623 (6th Cir. 2001) (granting summary judgment in favor of defendant who was aware of harassment by offending inmate and whose superior told him not to segregate plaintiff but instead to use cell isolation to attempt to protect plaintiff).[3]

To the extent that Plaintiff's claim is based on Defendant's failure to supervise others, I suggest that such a claim must also fail. Supervisory liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act." *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999). Instead, a "'§ 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.'" *Turner v. City of Taylor*, 412 F.3d 629, 643 (6th Cir. 2005) (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)). There has been no averment that Defendant did anything to authorize, approve or knowingly acquiesce in unconstitutional conduct; therefore, I suggest Plaintiff cannot withstand summary judgment on this basis.

Since I suggest that Plaintiff has failed to establish that a constitutional violation occurred, I further suggest that Defendant is entitled to qualified immunity. Therefore, I recommend that summary judgment be granted in favor of Defendant.

## III.  REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474

---

[3] Summary judgment was denied as to another defendant where a factual dispute existed as to whether he failed to even inquire who the offending inmate had previously assaulted or who he had threatened to kill. *Id.*

U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.


                                                s/ *Charles E. Binder*
                                                CHARLES E. BINDER
Dated: April 30, 2007                 United States Magistrate Judge


## CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Christine M. Campbell, and on Michael Williams by first class mail, and served on U.S. District Judge Ludington in the traditional manner.

Date:  April 30, 2007              By    s/Patricia T. Morris
                                              Law Clerk to Magistrate Judge Binder